IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-cr-105-RAH-JTA |
| | ) | |
| SHALONDA FAISON | ) | (WO) |
| | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the court on Defendant Shalonda Faison's motion to suppress in which she seeks to suppress evidence that law enforcement seized from her residence on June 28, 2021. (Doc. No. 34.)  After due consideration of the parties' arguments, evidence and applicable law, the undersigned concludes that the motion to suppress is due to be denied.

## I.  PROCEDURAL HISTORY

Faison is charged in this case with one count of conspiracy to make false statements during the purchase of firearms, two counts of false statements during the purchase of firearms, and two counts of transfer of firearms to a prohibited person. (Doc. No. 1 at 1, 4, 5.)  Faison entered a plea of not guilty to each count during her arraignment. (Doc. No. 31.)

Faison filed her motion to suppress evidence on June 9, 2022. (Doc. No. 34.)  The Government filed a response to the motion (Doc. No. 38), and Faison filed a reply (Doc. No. 39).  The undersigned conducted an evidentiary hearing on the motion on August 10,

2022.  (Doc. No. 42, Transcript of Evidentiary Hearing.)  Thereafter, Faison filed a post-hearing brief.  (Doc. No. 41.)  Hence, the motion is ripe for review.

## II.  FINDINGS OF FACT[1]

During the evidentiary hearing, the court heard testimony from Defendant Faison and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agents Richard Maddox, Julius Porter, and Charles Sedberry.  (Doc. No. 42, Tr. at 2.)  The testimony and evidence adduced at the hearing establish the following facts.[2]

On Monday, June 28, 2021, six law enforcement officers[3] went to 3770 Norman Bridge Road in Montgomery, to locate Tony Calhoun.[4]  Calhoun was a suspect in a federal firearms investigation whom law enforcement had seen entering and exiting the area by Faison's residence on Friday, June 25, 2021.  Law enforcement approached Faison's apartment twice on June 28.  Agent Porter was wearing an audio recording device which recorded both encounters.[5]

In the first encounter, two officers, Agent Porter and ATF Special Agent Mikiela Bowen, approached Faison's residence, stood on her porch, and knocked on her apartment

---

[1] The undersigned reaches findings of fact at a suppression hearing based on a preponderance of the evidence.  *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citation omitted).

[2] The undersigned finds the testimony of all four witnesses to be generally credible.

[3] This group of six was comprised of four ATF special agents and two detectives from the Montgomery Police Department ("MPD").  All of the law enforcement officers were wearing marked ballistic vests and street clothes and were armed with handguns.

[4] Calhoun is a co-defendant in this case.  (Doc. No. 1.)

[5] Both audio recordings were admitted as exhibits at the hearing.  (Gov. Exs. 1 & 2; Def. Exs. 1 & 2.)

door.  The other four officers did not approach the door and were position around a corner at a distance.  Agent Porter knocked on the door to Faison's residence, identified himself as police, and Faison opened the door.  Agent Porter inquired if Calhoun was present. Faison answered in the negative and Agent Porter inquired further.  Faison and Agent Porter briefly discussed the current location of Calhoun, where Calhoun resided, and the nature of Faison's relationship with Calhoun.  Faison provided her name to Agent Porter and the encounter ended.  During this encounter, Agent Porter neither raised his voice at Faison nor drew his weapon.

Thereafter, the law enforcement officers spoke to the apartment complex manager, and then immediately returned to the area by Faison's residence.

During the second encounter with Faison, Agent Porter and Agent Sedberry approached the front door.  Again, Agent Porter knocked on the door to Faison's residence. Agent Porter identified himself as "police again."  (Gov. Ex. 2 at 00:45.)  Faison answered the door, Agent Porter inquired about Calhoun's whereabouts, and Faison responded.  (*Id*. at 00:46-1:19.)  Agent Porter mentioned that Calhoun listed Faison's address on a form, noted that Calhoun was at Faison's residence "last Friday[,]" and questioned Faison regarding her contact with Calhoun.  (*Id*. at 00:54-1:29.)  When Agent Sedberry asked Faison whether Calhoun was in the residence "now[,]" she responded "No, he [was] not." (*Id*. at 1:28-1:31.)  Faison also asserted that she had no way of contacting Calhoun.  (*Id*. at 1:59-2:10.)  The discussion continued and the following exchange occurred:

> Agent Sedberry:     We don't want you to get in trouble for keeping him hiding somewhere if he is in here.

| | |
|---|---|
| Faison: | Well, I mean if he was, I woulda let y'all [unaudible] . . . . |
| Agent Sedberry: | I'm sorry? |
| Faison: | I said if he was I would have let ya'll [unaudible] . . . . |
| Agent Sedberry: | Well, can we look through and see if he's here?  Do you mind? |
| Faison: | OK. |

(Gov. Ex. 2. 2:15-2:38.)

Faison then backed away from the front door and held the door open for law enforcement to enter.  Four law enforcement officers[6] then entered Faison's residence.[7] The officers searched the first floor of the apartment for Calhoun[8] and continued to engage in conversation with Faison.  One of Faison's children was located on the first floor.  The first floor contained a living room, kitchen, and bathroom.  According to Agent Porter, Faison was cooperative, cordial, calm, and did not cry.[9]  According to Agent Sedberry, Faison was having a normal conversation, laughing at jokes, and did not appear to be

[6] These four law enforcement officers were Agents Porter, Maddox, Sedberry and Bowen.  (Doc. No. 42, Tr. at 71, 79.)  However, Faison testified that she only recalled three officers entering her apartment.  (Id. at 143.)

[7] Agents Porter and Sedberry testified that Faison did not tell them that they could only enter her apartment to talk.  (Id. at 41, 77-78, 115.)

[8] Agent Sedberry testified that the officers searched the first floor of Faison's residence in locations where an individual could hide.  (Id. at 78.)  He further testified that he did not observe any officer open drawers to search for contraband.  (Id. at 88.)

[9] Similarly, Agent Sedberry testified that Faison was calm, conversational, and did not appear to be in any distress or nervous.  (Id. at 83.)  Identical to the first encounter, no officer raised their voice at Faison or drew a weapon during the second encounter.  No officers informed Faison that she could refuse to consent to law enforcement entering her residence or refuse consent for law enforcement to go to the second floor of her apartment.

nervous.  Agent Maddox asked Faison if anyone else was upstairs besides her second child and she responded, "No."  (Gov. Ex. 2 at 3:23-3:38.)  Agent Maddox then asked Faison "do you mind if we go upstairs and look?" and she responded, "You can go ahead."  (Gov. Ex. 2 at 3:27-3:36; Doc. No. 42 at 41, 68-69, 89, 95, 95, 120-21.)  Faison, Agent Maddox and Agent Sedberry walked upstairs to the second floor of Faison's apartment, while Agent Porter remained on the landing between the first and second floors.  In an upstairs bedroom, behind a closed door, Calhoun was discovered by the law enforcement officers. The officers observed Calhoun sitting on the bed holding some paperwork and suspected marijuana in jars in plain view.

The MPD officers obtained a state search warrant based on the plain view of marijuana in the residence while the ATF agents secured the residence.  After receiving the search warrant, the MPD officers returned to the residence and executed it.  The officers located and seized marijuana, suspected cocaine, and several firearms from the apartment.

Faison is a high school graduate, who is in her second year of college, and is majoring in medical radiology.  (Doc. No. 42, Tr. at 157.)  She testified that when she opened the door to speak with law enforcement, she knew Calhoun was upstairs, and she wanted to hide the marijuana and guns from law enforcement.  (*Id*. at 130.)  She also testified that when law enforcement approached her residence the second time, she "was a little nervous and scared and wondering why they were back." (*Id*. at 138.)  She testified that she consented to the entry by law enforcement because she "felt scared[,]" that she should "just let them in or they'll come back and knock on the door again[,]" and she did not understand why they returned when her kids were present.  (*Id*. at 139.)  She further

testified that she was scared by Agent Sedberry's comment relating to her getting in trouble by hiding Calhoun because she "felt like maybe [she] would get in trouble." (*Id*. at 140.) Faison testified that she was not scared because of anything the agents did, but "scared" that law enforcement would "find something" and she would get in trouble. (*Id*. at 145, 151, 154.) Finally, she testified that the agents were cordial, and she did not think they were going to go upstairs or ask to go upstairs, but she "felt as if [she] let them in the house [then she] should let them go upstairs." (*Id*. at 140, 143, 149.)

## III.   DISCUSSION

Faison challenges the search of her residence arguing that her consent was coerced and not voluntary. She contends that she consented to the entry and search of her residence under intimidation from multiple armed law enforcement officers. She also argues that her consent to search and the seizure of evidence by law enforcement pursuant to a search warrant were products of illegal police activity. She further argues that the warrantless search of her residence was not justified by a protective sweep. Faison concludes that the search warrant, evidence seized during the search, and her subsequent incriminating statements should be suppressed under the fruit of the poisonous tree doctrine.[10]

The Government argues that Faison's consent to the entry and search of her residence by law enforcement was voluntary. The Government also argues that a protective sweep did not occur in this case. The Government concludes that the evidence

---

[10] Faison is not raising a facial challenge to the search warrant. (Doc. No. 42, Tr. at 167.)

recovered during the initial search, as well as the evidence recovered during the execution of the search warrant, was legally obtained.

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809 (1996).  "A warrantless entry into a suspect's home to search the premises is presumed to be unreasonable." *United States v. Ramirez-Chilel*, 289 F.3d 744, 751 (11th Cir. 2002).  However, a well-settled exception to this rule is an entry or search conducted pursuant to voluntary consent.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Stiner*, 551 F. Supp. 2d 1350, 1357 (M.D. Fla. 2008) ("When determining that consent has been given, irrespective of whether the consent goes to a search for evidence or entry into a residence, the Court must . . . determine that the consent was voluntary.").

"Whether a suspect voluntarily gave consent to a search is a question of fact to be determined by the totality of the circumstances." *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).  Similarly, whether there were any limitations placed on the consent given and whether the search conformed to those limitations is to be determined by the totality of the circumstances.  *Blake*, 888 F.2d at 798.  "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989) (citation omitted).  "In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth*, 412 U.S.

at 229.  "The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." *Blake*, 888 F.2d at 798.  *See also Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) (holding that a prosecutor who relies on consent to justify a search must show that such consent was freely and voluntarily given).

"The determination as to whether a suspect's consent is voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis." *Blake*, 888 F.2d at 798 (citing *Schneckloth*, 412 U.S. at 224-25).  "In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer[s], the defendant's awareness of [her] right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001).  "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *Schneckloth*, 412 U.S. at 227.  Therefore, the government is not required to prove that the defendant was aware of the right to refuse to consent. *United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir. 1984).

Considering the totality of the circumstances, the undersigned finds that Faison's consent for law enforcement to enter and search the first floor of her residence for Calhoun was freely and voluntarily given.  The most salient factors are the absence of any coercive police procedures and Faison's cooperation.  Agent Porter knocked on the door in a normal

fashion and Faison answered without an undue delay.  The tones of Agents Porter and Sedberry throughout the encounter were pleasant and cordial.  Neither agent abused, threatened or coerced Faison at any time, and neither agent had their weapons drawn.  *See United States v. Jones*, 475 F.2d 723, 730 (5th Cir. 1973) ("[T]he absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent.").[11]  Undeniably, Faison agreed that the agents were cordial and testified that she was not scared of anything that they did. Although Faison testified that she was scared by Agent Sedberry's comment relating to her getting in trouble by hiding Calhoun, such a truthful statement by law enforcement falls woefully short of coercion or duress.[12]  In making this determination, the undersigned considers Faison's high school education and intelligence, and finds that factor supports

---

[11] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[12] The undersigned finds the list of cases provided by the court in *Turner v. Troncone*, Civil Action Number 5:17-cv-2092-GMB, 2019 WL 4415568, at * 8 (N.D. Ala. 2019), to be persuasive on this issue.

> *See United States v. Danner*, 720 F. App'x 529, 530 (11th Cir. 2017) (no coercion because the individual was not handcuffed, officers did not draw their weapons, and they did not yell or threaten her); [*United States v.] Delancey*, 502 F.3d [1297,] . . . 1308 [(11th Cir. 2007)] (no coercion because the plaintiff was not threatened with violence or removal of her children); *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (no coercion because police neither yelled nor threatened violence, and the "encounter [was] quite low-key and professional"); *Hudson v. Hall*, 231 F.3d 1289, 1296 (11th Cir. 2000) (finding consent was voluntary because officers did not threaten force or verbally abuse the plaintiff).

*Id*.

voluntariness.[13]   Finally, Faison was also calm, cooperative, and readily agreed to allow the agents to enter the residence to search for Calhoun.

Despite Faison's arguments to the contrary,[14] there is no evidence before the court that her consent to the law enforcement officers' entry into her residence was for the limited purpose of talking.   The audio recording from the encounter supports the agents' testimony that they requested entry to search for Calhoun and Faison consented to the same. Moreover, Faison did not object to the law enforcement officers' search of the first floor for Calhoun after they entered her residence, nor did she attempt to revoke her consent. Finally, to the extent that Faison argues the sheer number of law enforcement officers involved here supports a finding of coercion, the evidence and law refute this claim.   Only six law enforcement officers were involved in this event and only four officers entered Faison's residence.   Under the controlling law of the Eleventh Circuit, the small number of law enforcement officers involved does not support a finding that Faison's consent was involuntary.   *See United States v. Garcia*, 890 F.2d 355, 362 (11th Cir. 1989) (finding

---

[13] Faison's belief that incriminating evidence would be found is irrelevant in this case. The Eleventh Circuit has limited that factor to cases "where the suspect freely consents to the search because [s]he believes [s]he has nothing to hide." *Tukes v. Dugger*, 911 F.2d 508, 517 (11th Cir. 1990) (citing *United States v. Hall*, 565 F.2d 917 (5th Cir. 1978)).

[14] Faison, citing *United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2007), contends her consent and the evidence seized subsequently under a search warrant were products of an illegal entry.   (Doc. No. 34 at 7.)   "Under controlling case law, [the court is] required to conduct two separate inquiries where a consent to search *follows* prior illegal activity by the police." *Delancy*, 502 F.3d at 1308 (emphasis added).   *Delancy* is inapplicable here because no evidence before the court establishes that Faison's consent followed any illegal activity by the law enforcement officers.   Faison's argument is thus without merit.

consent to search residence by defendant, who was arrested with 14 agents present and was handcuffed, was voluntary).

Likewise, the totality of the circumstances establishes that Faison's consent for law enforcement to enter and search the second floor of her residence was freely and voluntarily given. Again, the conversation between Faison and the agents was casual, she was never placed in handcuffs, and the agents' weapons were holstered. No abusive language or physical threats were directed at Faison and the agents never raised their voices. Faison agreed that the agents were cordial and testified that she was not scared of anything that they did. It appears that Faison agreed to the search of the second floor – despite knowing that Calhoun was located there – because she felt pressured. However, the pressure does not appear to have been from law enforcement; the pressure appears to have been from Faison herself. (*See* Doc. No. 42, Tr. at 143) (Faison testified that she "felt as if [she] let them in the house [then she] should let them go upstairs.") The evidence shows that Faison was calm, cooperative, and readily agreed to allow the agents to enter the second floor of the residence to search for Calhoun. Finally, Faison's education and intelligence weigh in favor of finding her consent voluntary.

For these reasons, considering the totality of the circumstances, the undersigned finds that Faison voluntarily provided consent to the officers to enter her residence and search the first and second floors for Calhoun. There is no evidence that Faison's consent

was coerced or the product of duress.  Thus, law enforcement's entry in the first and second floors of Faison's residence did not violate the Fourth Amendment.[15]

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to suppress (Doc. No. 34) be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **November 30, 2022.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-

---

[15] The undersigned finds no need to address Faison's protective sweep argument inasmuch as the law enforcement officers' search for Calhoun was not a protective sweep incident to arrest. It is well-settled that "[l]aw enforcement officers are permitted, in the context of a valid arrest, to conduct a protective sweep of a residence for officers' safety." *United States v. Yeary*, 740 F.3d 569, 579 (11th Cir. 2014).  Here, it is undisputed that the law enforcement officers did not have a warrant for the arrest of Calhoun when they approached Faison's residence on June 28, 2021. (Doc. No. 34 at 2, 8; Doc. No. 38 at 1.)  Rather, the evidence establishes that the law enforcement officers merely were looking for Calhoun at Faison's residence on that date and she consented to the search.

1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);

*Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

    DONE this 15th day of November, 2022.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE